UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                      Case No. 11-20564

v.

                                      Hon. John Corbett O'Meara

D-1 CLARENCE WILLIAMSON,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

Before the court is Defendant Clarence Williamson's motion to suppress evidence, filed November 10, 2014, which has been fully briefed. For the reasons stated below, Defendant's motion is denied.

## BACKGROUND FACTS

On January 21, 2005, Williamson was driving a van on Interstate 40 in Oklahoma. At about 3 a.m., Trooper Tracy Brown observed the van left of the lane line for approximately one quarter mile. Pulling on to the highway behind the van, Trooper Brown "observed the vehicle to travel from the number two lane from the center to the number one lane without signaling, the vehicle then traveled back across the number two lane onto the shoulder. The vehicle traveled across the lane line a total of three times and onto the shoulder twice, all movements were done

without prior intention to change lanes." Pl.'s Ex. 1 (Oklahoma Highway Patrol Case Record).

Trooper Brown initiated a traffic stop of the van. Williamson told the officer the "the reason he was all over the road was that he was making sure he was on the right one." Id. Trooper Brown asked Williamson to step out of the van and to sit in the passenger seat of the patrol car. As the officer filled out a warning for the traffic violation, he asked Williamson a few questions regarding the purpose of his trip and his passengers. Williamson stated that they were going to Las Vegas to visit family. During this conversation, Trooper Brown noticed that Williamson's "hands were shaking, his legs were shaking, and that there was some sweat that was building on his upper lip and running down the side of his head." Pl.'s Ex. 1.

Trooper Brown then approached the front seat passenger, Brenda Riley (Williamson's mother), to ask if she could locate the proof of insurance form for the van. As Riley was looking for the insurance form, Trooper Brown asked her whether they were going to visit family or friends in Las Vegas. Riley said no. Trooper Brown noticed that Riley's hands were shaking and that she seemed nervous. The officer also observed that the back seat passenger looked at him, then "dropped his head and pretended to be sleeping." Id.

Trooper Brown returned to the patrol car and gave Williamson the written

warning to sign. Trooper Brown told him to have a safe trip, and Williamson began to exit the vehicle. The officer then asked if Williamson had a minute to answer some additional questions, to which Williamson agreed. Trooper Brown asked if the group was conducting illegal activities, such as drinking and driving or transporting firearms, illegal drugs, or large amounts of U.S. currency. Williamson said no. Trooper Brown then asked if Williamson would consent to a search of the van. As evidenced on the police video, Williamson agreed to the search. See Pl.'s Ex. 2 (video of traffic stop).

Trooper Brown also asked the owner of the van, who was another passenger, to consent to a search. The owner, Christel Mervin, agreed to the search. See id. Once Trooper Brown entered the van, he noticed that the interior had been recently remodeled. When he pushed on the back interior panel of the van, he saw a large amount of U.S. currency. Subsequently, a full search of the van revealed approximately $1.5 million in U.S. currency and two loaded firearms.

## LAW AND ANALYSIS

Defendant argues that there was no probable cause for the traffic stop and that the evidence should be suppressed. With respect to the traffic stop, Trooper Brown observed Williamson driving erratically at 3 a.m. When told the reason for the traffic stop, Williamson did not deny crossing the lane lines three times and the

shoulder line twice.  See Pl.'s Ex. 2 (video).  These facts establish probable cause for the traffic stop.  See United States v. Simpson, 520 F.3d 531, 538-41 (6th Cir. 2008) (police may conduct traffic stop if there is reasonable suspicion of an ongoing violation or probable cause to believe that a traffic violation has occurred).[1]  Although Defendant wishes to question Trooper Brown regarding his "racial motivation" for the stop, such evidence is not relevant to whether the stop was constitutional under the Fourth Amendment.  Whren v. United States, 517 U.S. 806, 812-13 (1996) (constitutional reasonableness of traffic stop depends upon existence of probable cause, not on the subjective motivation of the police officer).  See also United States v. Everett, 601 F.3d 484, 488 (6th Cir. 2010) (officer motivation irrelevant and traffic stop not pretextual when defendant admitted he was speeding).

The Fourth Amendment also does not prohibit Trooper Brown from questioning Defendant about matters extraneous to the traffic stop, as long as the responses are voluntary and the detention is not measurably extended.  Arizona v. Johnson, 555 U.S. 323 (2009).  Further, given the circumstances, including the

---

[1] Although there is "some confusion in this Circuit as to whether the probable cause or reasonable suspicion standard applies in traffic stops," the court need not reach this issue, because the facts here clearly meet the higher probable cause standard. See United States v. Jeffries, 457 Fed. Appx. 471 at *5 (6th Cir. Jan. 24, 2012).

nervousness of the Williamson and Riley, the passengers pretending to be sleeping, and the contradictory information regarding the purpose of the trip, Trooper Brown was reasonable in detaining and questioning Williamson further. See United States v. Smith, 601 F.3d 530, 542 (6th Cir. 2010) ("Because the initial stop was supported by probable cause and because each extension of the stop was supported by reasonable suspicion of additional criminal activity, the evidence obtained from the stop was admissible.").

Moreover, the video clearly shows that both Williamson and the owner of the van consented to the search. Although Defendant argues that Christel Mervin's consent was "inebriated," the video does not suggest that Mervin was intoxicated and there is no evidence she had taken anything other than Nyquil cold medicine.

## ORDER

For all of these reasons, IT IS HEREBY ORDERED that Defendant's motion to suppress is DENIED.

                                                s/John Corbett O'Meara
                                                United States District Judge

Date: November 24, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, November 24, 2014, using the ECF system.

                                                s/William Barkholz
                                                Case Manager