UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                             Case No. 11-20564

vs.                                       HON. MARK A. GOLDSMITH

CLARENCE WILLIAMSON, JR.,

                Defendant.

_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION FOR COMPASSIONATE
## RELEASE (Dkt. 828)

A jury found Defendant Clarence Williamson, Jr. guilty of conspiracy to possess with intent to distribute marijuana and cocaine, conspiracy to commit money laundering, and conspiracy to possess a firearm in furtherance of a drug trafficking crime. Jury Verdict Form (Dkt. 496). On June 11, 2015, Judge John Corbett O'Meara sentenced Williamson to 360 months' imprisonment. Judgment (Dkt. 562).[1] Williamson is currently incarcerated at the federal correctional institution in Terre Haute, Indiana. He is expected to be released in January 2040.

Williamson previously filed two motions for compassionate release. The Court denied Williamson's first motion for failure to exhaust his administrative remedies, 6/9/20 Op. (Dkt. 725), and his second motion after a complete review on the merits, 10/26/20 Order (Dkt. 779). This matter is before the Court on Williamson's third motion for compassionate release (Dkt. 828), in which he

---

[1] This matter was reassigned to the undersigned on March 19, 2018.

seeks immediate release or, alternatively, home confinement.[2]  Having reviewed all of the briefing

and record materials,[3] the Court denies Williamson's motion, for the reasons stated below.[4]

## I. ANALYSIS

The First Step Act (FSA) modified the statute concerning the compassionate release of

federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by

incarcerated defendants seeking to reduce their sentences.  United States v. Ruffin, 978 F.3d 1000,

---

[2] To the extent that Williamson seeks home confinement under the Coronavirus Aid, Relief, and Economic Security Act, § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (2020), his motion is denied because the Bureau of Prisons (BOP) has sole discretion to grant such relief.  See United States v. Mattice, No. 20-3668, 2020 WL 7587155, at *2 (6th Cir. Oct. 7, 2020).  However, the Court may consider Williamson's request for home confinement under 18 U.S.C. § 3582(c). Courts granting compassionate release pursuant to that statute may convert a defendant's remaining sentence term to a term of supervised release and impose an initial term of home detention.  See, e.g., United States v. Amarrah, 458 F. Supp. 3d 611, 620–621 (E.D. Mich. 2020).

[3] In response to Williamson's prior motions, the Government produced Williamson's medical records from 2017–2020 (Dkts. 716–719, 747).  When he filed the instant motion, Williamson asked the Court to require the Government to produce his post-October 26, 2020 medical records. Mot. at 2 n.2.  The Court entered an order requiring the Government to produce "all Bureau of Prisons records (medical, institutional, administrative) relevant to this motion," including "Defendant's post-October 26, 2020 medical records."  2/14/22 Order (Dkt. 829).  The Government produced all such records.  See 2021 Medical Records (Dkt. 831-1); 2022 Medical Records (Dkt. 831-2); Disciplinary Record (Dkt. 836-3); Inmate Education Data Transcript (Dkt. 836-4); Warden Resp. (Dkt. 836-5); Warden Letter (Dkt. 836-6).  Nevertheless, Williamson claims that "[t]here are more institutional and administrative records" and "[s]omebody at the prison or elsewhere is cherry picking the documents supplied to Defendant to exclude favorable material to Mr. Williamson and unfavorable material to the prison."  Reply at 6 (Dkt. 839).  The records that Williamson appears to be referring to are ones that he attached to his own motion.  See id. ("[T]he records attached to Defendant's Motion as Exhibit 3 (low recidivism rating) and Exhibit 4 (Program Management rating Defendant as a low) are not included in the production by government.").  It does not appear to the Court that the Government failed to produce any records commonly produced in connection with compassionate release matters.

[4] Because oral argument will not aid the Court's decision, the motion will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2).  In addition to the motion, the briefing includes the Government's response (Dkt. 830), Williamson's reply, and Williamson's supplemental brief (Dkt. 843).

1003–1004 (6th Cir. 2020).[5]  Before granting a compassionate release motion, a district court must

engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons

warrant [a sentence] reduction"; (ii) it must ensure "that such a reduction is consistent with

applicable policy statements issued by the Sentencing Commission"; and (iii) it must "consider[]

all relevant sentencing factors listed in 18 U.S.C. § 3553(a)."  United States v. Jones, 980 F.3d

1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).  If all of those requirements are

met, the district court "may reduce the term of imprisonment," but it need not do so.  18 U.S.C.

§ 3582(c)(1)(A).

Regarding the first step of the inquiry, the United States Court of Appeals for the Sixth

Circuit has held that, with respect to motions for compassionate release filed by imprisoned

individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G.

§ 1B1.13.  Jones, 980 F.3d at 1109.  It has further held that "[u]ntil the Sentencing Commission

updates § 1B1.13 to reflect the [FSA], district courts have full discretion in the interim to determine

whether an 'extraordinary and compelling' reason justifies compassionate release when an

imprisoned person files a § 3582(c)(1)(A) motion."  Id.

The Court considers whether (i) extraordinary and compelling circumstances exist and (ii)

the § 3553(a) factors support reducing Williamson's sentence.

### A.  Extraordinary and Compelling Circumstances

Williamson incorporates by reference the arguments made in his briefing for his second

motion for compassionate release.  See Mot. at 2.  In his second motion, Williamson argued that

---

[5] Before an inmate moves for compassionate release under § 3582(c)(1), the inmate must either
exhaust his or her administrative remedies with the BOP or wait 30 days from when the inmate
filed a request with his or her warden.  18 U.S.C. § 3582(c)(1)(A); United States v. Alam, 960 F.3d
831, 832 (6th Cir. 2020).  Here, the Government does not raise exhaustion as an issue.  Even
assuming that the exhaustion requirement is satisfied, Williamson's motion fails on the merits.

he had a "host of serious underlying diseases which place him in the COVID-19 highest risk category as identified by the Center[s] for Disease Control [and Prevention] ('CDC')." 2d Mot. at 1–2 (Dkt. 743). These conditions include hypertension, bronchitis, sleep apnea with a continuous positive airway pressure (CPAP) machine, obesity, tuberculosis bacteria, cancer,[6] and urinary tract disorders. Reply at 1 n.1 (citing 2d Mot.). Williamson asserts that he now also has diabetes, epididymitis, and a sore on his buttocks, and that there has been a severe outbreak of COVID-19 at his prison. Mot. at 3; Def. Supp. Br. at 2.

The Government understands Williamson to be seeking compassionate release based on his fears that his underlying health conditions increase his risk of severe illness from COVID-19. See Resp. at 6. However, in his reply, Williamson states that he "now contends that his serious medical conditions and the circumstances of his confinement constitute an extraordinary and compelling reason warranting relief without regard to whether or not Defendant is susceptible to contracting the COVID-19 virus." Reply at 3. It is unclear whether Williamson is arguing that (i) he does not seek compassionate release based on his alleged susceptibility to COVID-19, or (ii) his alleged susceptibility is one of several reasons that entitle him to compassionate release. To err on the side of caution, the Court treats it as one of the reasons put forth by Williamson for compassionate release.

The Court addresses in turn Williams's asserted extraordinary and compelling reasons for compassionate release, which include: (i) his medical conditions, (ii) his susceptibility to COVID-19, and (iii) the circumstances of his confinement.

---

[6] Previously, Williamson was diagnosed with both thyroid cancer and prostate cancer. However, because Williamson was treated for prostate cancer in 2003, see 2021 Medical Records at PageID.7499, and his current medical records reflect that his prostate cancer has been "resolved" since 2014, see 2022 Medical Records at PageID.7675, the Court assumes that Williamson is referring to his thyroid cancer when he refers to his "cancer."

### i. Medical Conditions

The policy statement from the sentencing guidelines (which is not binding on this Court when determining whether extraordinary and compelling reasons exist, but nevertheless is instructive) contemplates compassionate release based on the medical condition of a defendant upon a showing that the defendant is (i) "suffering from a terminal illness" or (ii) "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A); see also United States v. Daniels, No. 19-cr-00204, 2022 WL 164543, at *5 (M.D. Tenn. Jan. 18, 2022) ("Although § 1B1.13 is not binding, this policy guidance is highly persuasive authority in resolving motions for compassionate release.").

Williamson does not contend that he is suffering from a terminal illness. Rather, he asserts that he is suffering from serious medical conditions, including: thyroid cancer, urinary tract disorders, epididymitis, a sore on his buttocks, hypertension, bronchitis, sleep apnea, obesity, tuberculosis bacteria, and diabetes. He argues that his ability to provide self-care in the prison setting has been diminished, largely because he has received inadequate medical treatment in prison. Williamson's contentions are belied by the record, as the below analysis demonstrates.

### a. Thyroid Cancer

Williamson has a history of thyroid cancer. 2017 Medical Records at PageID.4927 (Dkt. 716). In 2015, a thyroid mass was discovered, and in 2017, Williamson received a thyroid isthmusectomy—a procedure to remove a thyroid mass. Id. at PageID.4927, 5127. After the procedure, surveillance was put in place to monitor for resurgence of the cancer. Id. at PageID.4927. The thyroid procedure was evidently successful, as his current medical records do

not reflect that he presently has thyroid cancer but, rather, that "surveillance" is still "in place." 2021 Medical Records at PageID.7593. Williamson, therefore, has not shown that he presently has thyroid cancer or that it diminishes his ability to provide self-care in prison.

### b. Urologic Conditions

Williamson's medical records reflect that he was diagnosed with urinary tract infections in 2017, and that in 2018, he received a surgery to address these issues. Urethral Stricture Records at PageID.4549 (Dkt. 700-6); 2022 Medical Records at PageID.7675. Williamson's urinary tract infections, therefore, can be—and have been—managed in the prison setting.

In terms of other urologic conditions, Williamson asserts that he has epididymitis—an inflammation of the tube at the back of the testicle. Def. Supp. Br. at 2. Williamson's medical records reflect that he has received medication for this condition. 2021 Medical Records at PageID.7499. However, Williamson contends that a urologist at the prison told him that he would not be treated for epididymitis until he has an operation on his chest. Def. Supp. Br. at 2. Williamson refused the chest operation but contends that he "has good reason to refuse the operation." See id. Williamson does not, however, contend that his epididymitis is being mismanaged in the prison setting or that his ability to provide self-care would somehow be increased outside of prison. See id.[7]

### c. Buttocks Sore

Williamson contends that he "has an open sore on his buttocks the size of a quarter and has not received adequate medical treatment for the sore." Id. Williamson's medical records reflect

---

[7] In his supplemental brief, Williamson contends that during a recent lockdown, he "was only given one bottle of water for the twenty days," and "now there is a portable toilet outside where inmates have to wait until their unit is called." Def. Supp. Br. at 2. He states this arrangement is "very difficult" for him given his "bladder problems." Id. He does not argue, however, that this arrangement prevents him from providing self-care in the prison setting.

that he was diagnosed in May 2019 with a "boil to right buttock," but that this condition was resolved as of November 2019.  2022 Medical Records at PageID.7677.  It thus appears that he has received care for this condition.  In any case, not just any medical condition entitles a prisoner to compassionate release.  There is no indication that this condition is so serious that it warrants compassionate release.

### d.  Hypertension

Williamson is currently receiving medication for his hypertension.  Id. at PageID.7671, 7681.  On December 28, 2021, Williamson's blood pressure was 118/73 mmHg, see 2021 Medical Records at PageID.7500, which qualifies as a normal reading.[8]  This condition, therefore, is neither serious nor one that would diminish Williamson's ability to provide self-care in prison.

### e.  Breathing Conditions

Williamson contends that he has bronchitis, sleep apnea, and tuberculosis bacteria.  As for the first condition, medical records that he had an acute case of bronchitis in 2020 that was resolved as of October 2020.  2022 Medical Records at PageID.7676.

As for the second condition, Williamson's medical records confirm that he has sleep apnea, see id. at PageID.7672; however, Williamson has been given a CPAP, 2021 Medical Records at PageID.7605, indicating that his sleep apnea is able to be managed in the prison setting.

As for the third condition, Williamson's medical records reflect a history of "LTBI Prophy Hx [(latent tuberculosis infection prophylaxis history)] Prior to BOP Incarceration."  2022 Medical

---

[8] A "normal" blood pressure is <120mmHG/<80mmHg.  See Centers for Disease Control and Prevention (CDC), "High Blood Pressure," https://www.cdc.gov/bloodpressure/facts.htm (last visited Apr. 7, 2022).

Records at PageID.7672.  "Prophylaxis" refers to treatment designed to prevent disease.[9]  While Williamson's history of LTBI is listed as "current" in his medical records, id., his LTBI treatment is listed as "resolved" as of 2017, id. at PageID.7676.  As a result, Williamson has not shown that his LTBI is an ongoing medical condition that diminishes his ability to care for himself in prison.

### f.  Diabetes

Williamson's medical records confirm that he has Type 2 diabetes mellitus.  Id. at PageID.7672.  However, it appears that this condition is under control.  A medical note from October 2021 regarding Williamson's diabetes states: "He has been doing very well.  He has lost 19 pounds since last December.  He is currently on no medication and just doing diet and exercise alone."  2021 Medical Records at PageID.7512.  Due to Williamson's progress, his diabetes is "[n]ow really prediabetes," and should continue to not pose a serious health issue as long as he continues dieting and "weight loss."  Id. at PageID.7516.  Williamson's diabetes, therefore, is not so serious that it diminishes his ability to care for himself in prison.

### g.  Obesity

As the medical notes regarding Williamson's diabetes indicate, he is capable of losing weight in the prison setting.  As a result, his weight is a condition that can be managed in the prison setting.

### h.  Conclusion Regarding Medical Conditions

Williamson has not shown that he has a serious medical condition that cannot be managed in the prison setting.  He contends that the COVID-19 pandemic has affected his ability to provide self-care in prison because "lockdowns" have caused him to miss medical appointments.  Def.

---

[9]    See   Merriam-Webster   Dictionary,   "Prophylaxis,"   https://www.merriam-webster.com/dictionary/prophylaxis (last visited Apr. 8, 2022).

Supp. Br. at 1.  At the same time, he concedes that the lockdown restrictions were "removed last month," id., meaning that they are no longer a barrier to his ability to provide self-care in the prison context.

Williamson's medical conditions—standing on their own or in combination with restrictions caused by the pandemic—do not constitute extraordinary and compelling reasons to release him.

### ii. COVID-19

With respect to motions for compassionate release premised on a defendant's fear of contracting and suffering severe illness from COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release.  United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020).  Prior to the development of the COVID-19 vaccines, courts would generally consult the guidance on high-risk factors published by the CDC to determine whether a defendant's specific conditions placed the defendant at a higher risk of suffering severe illness from COVID-19.  See United States v. Elias, 984 F.3d 516, 521 (6th Cir. 2021).  However, following the development of the vaccines, courts now examine whether a defendant has been offered a COVID-19 vaccine, because "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction."  United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021).

To the extent that Williamson fears suffering severe illness from COVID-19, this fear is non-compelling due to his access to the vaccine.  See id.  Williamson's access is evinced by his

medical records, which reflect that Williamson was offered—but refused—the Pfizer BioNTech vaccine.  2021 Medical Records at PageID.7603.

Williamson, confusingly, argues that he refused the Johnson & Johnson vaccine—not the Pfizer BioNTech vaccine—because "the CDC, at the time, issued statements cautioning against taking the vaccine.  The prison did not offer the Pfizer or Moderna vaccines."  Def. Supp. Br. at 1.  But even if Williamson was offered the Johnson & Johnson vaccine (contrary to what his medical records indicate), he cites no support for his position that the CDC once advised against that vaccine.  Lemons makes an exception only for prisoners who refused the vaccine because they are "unable to receive or benefit from a vaccine"; Williamson has not shown that he is medically unable to receive or benefit from the vaccine.  15 F.4th at 751 (citing United States v. Ugbah, 4 F.4th 595, 597 (7th Cir. 2021) (affirming denial of compassionate release to prisoner who refused a vaccine and "never contended that he is medically unable to receive or benefit from the available vaccines")).

Before leaving the subject, the Court notes Williamson's argument that there is a severe outbreak of COVID-19 at his prison.  Mot. at 3.  This argument is undercut by the available data.  Currently, there are no confirmed active COVID-19 cases among inmates or staff at FCI Terre Haute.[10]   Further, of the 3,258 inmates at FCC Terre Haute,[11] 2,314 have been vaccinated (71.02%).[12]

---

[10] BOP, "COVID-19 Cases," https://www.bop.gov/coronavirus/ (last visited Apr. 8, 2022).

[11] FCC Terre Haute is comprised of FCI Terre Haute and USP Terre Haute.  FCI Terre Haute houses 1,328 inmates.  BOP, "FCI Terre Haute," https://www.bop.gov/locations/institutions/tha/ (last visited Apr. 8, 2022).  USP Terre Haute houses 1,196 inmates.  See BOP, "USP Terre Haute," https://www.bop.gov/locations/institutions/thp/ (last visited Apr. 8, 2022).

[12] BOP, "COVID-19 Vaccine Implementation," https://www.bop.gov/coronavirus/ (last visited Mar. 24, 2022).

For these reasons, to the extent Williamson fears contracting and suffering severe illness from COVID-19, this fear is not a compelling and extraordinary reason to release him.

### iii.  Circumstances of Confinement

Williamson argues that he is entitled to release because he "has been rated for a low prison and a low risk of recidivism for almost three years now and has yet to be moved from FCI Terre Haute, a medium security prison."  Reply at 3.  Williamson speculates that he has not been moved to a lower security prison due to the COVID-19 pandemic and the "Red" operating status of FCI Terre Haute, which has now been removed.  Id. at 3–4, 4 n.4.  In his supplemental reply brief, Williamson adds that he should be transferred to "a facility like Rochester Medical Correctional" so that he can receive increased care for his medical conditions.  Def. Supp. Br. at 2.

Regardless of the reason for the delay in transferring Williamson, prisoners have no right to be incarcerated in a specific institution.  See Meachum v. Fano, 427 U.S. 215, 224 (1976); Beard v. Livesay, 798 F.2d 874, 876 (6th Cir. 1986).  Further, responsibility for the transfer of prisoners rests with the BOP, not the sentencing court.  Walker v. Hughes, 558 F.2d 1247, 1252–1253 (6th Cir. 1977) ("Federal statutory law gives federal prison full discretion in the treatment of prisoners and does not restrict the authority of prison officials over the inmates as to . . . transfer to other prisons."); see also 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment . . . .  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau.").  The fact that the BOP has chosen to not exercise its power to transfer Williamson is within its discretion and, therefore, not an extraordinary and compelling reason to release Williamson.  The fact that the BOP has not transferred Williamson during the pandemic is particularly non-compelling, as restricting inmate transfers between prisons could very well be a means of combatting the spread

11

of the virus.  The Court declines to accept Williamson's implicit invitation to second-guess the BOP's transfer decisions.  See United States v. Schubert, 1:14-cr-00122, 2020 WL 5044029, at *1 (N.D. Ohio Aug. 26, 2020) (explaining that courts lack authority to make transfer decisions).

Williamson has not shown an extraordinary or compelling reason to grant him compassionate release.  Even if he had, his release would still be unwarranted based on the § 3553(a) factors, as explained below.

**B.  Section 3553(a) Factors**

Before granting a sentence reduction under the FSA, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.

Williamson contends that he would not endanger the public if released because the BOP has rated him as having a low risk of recidivism.  Reply at 5.  But the severity of Williamson's crimes cast significant doubt on his ability to not reoffend if released.  Williamson was the leader of a drug conspiracy that moved hundreds of kilograms of cocaine, and also marijuana, to and from Detroit, Michigan and across the country.[13]  Williamson possessed guns during this conspiracy, twice bringing guns with him to confront drug dealers who owed him money.  See Trial Trans. Vol. 4 at PageID.2845–2848 (Dkt. 575); Trial Trans. Vol. 5 at PageID.2980–2981 (Dkt. 576).  Williamson suggests that his crimes were not violent because he never discharged his guns or used them to commit a violent act.  Reply at 4 n.5.  However, "selling drugs while

---

[13] Williamson attempts to relitigate his objections to the presentence investigation report's inclusion of cocaine in his drug crimes.  See Mot. at 13–15.  However, motion for compassionate release is not a proper vehicle to, in effect, collaterally attack the factual bases of a final conviction. See United States v. Aigbekaen, JKB-15-0462, 2021 WL 5909680, at *3 (D. Md. Dec. 14, 2021).

possessing a firearm indicates that [Williamson] was prepared to use violence to protect himself, his drugs, and his drug proceeds." United States v. Dewberry, No. 15-20471, 2021 WL 405989, at *3 (E.D. Mich. Feb. 5, 2021). Moreover, the distribution of drugs like cocaine, which is categorized as a category II controlled substance due to its high potential for abuse, presents a real danger to the public. See, e.g., United States v. Smith, No. 10-20388, 2021 WL 3077879, at *3 (E.D. Mich. July 21, 2021) (denying compassionate release to a defendant whose crimes involved the distribution of heroin and cocaine because "[t]he circulation of such addictive drugs in the community presents a grave danger to the community's health and wellbeing").

Williamson suggests that his dangerousness can be diminished by releasing him to home confinement. The Court is not so assured. Williamson initially used homes to run his drug operation. See Trial Trans. Vol. 5 at PageID.3024–3025. Returning him to such an environment, therefore, is clearly risky. Further, as the leader of the drug conspiracy, Williamson used other dealers to sell drugs and bring the drug proceeds to him. See, e.g., id. at PageID.3026–3027. Williamson could easily employ a similar arrangement from home confinement to distribute drugs. Such an arrangement would enable him to evade detection by available monitoring devices like GPS trackers.

Also weighing against Williamson is the fact that he has served fewer than six years of his 30-year sentence. In other words, he has served significantly less than half of his sentence. Releasing Williamson when the majority of his sentence remains would not promote respect for the law or provide just punishment. See, e.g., Ruffin, 978 F.3d at 1008 (affirming district court decision that § 3553(a) factors did not support a sentence reduction in part because the defendant was yet to serve even half of his sentence); United States v. Richards, No. 12-20372, 2021 WL 912389, at *3 (E.D. Mich. Mar. 10, 2021) ("[A]llowing Defendant to be released after serving less

13

than half of his sentence would not promote respect for the law or proper deterrence, [or] provide just punishment . . . .").

The § 3553(a) factors, therefore, weigh against granting Williamson's motion.

## II.  CONCLUSION

For the reasons stated above, Williamson's motion for compassionate release (Dkt. 828) is denied.

SO ORDERED.

Dated: April 13, 2022                                 s/Mark A. Goldsmith
      Detroit, Michigan                        MARK A. GOLDSMITH
                                                   United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 13, 2022.

                                           s/Karri Sandusky
                                         KARRI SANDUSKY
                                         Case Manager